UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.

**SMK ASSOCIATES, LLC,**
An Illinois Limited Liability Company

       Plaintiff,

v.

**LORALI, INC.,** A Florida Corporation,
**V & B TRADING, LLC,** A Florida Limited Liability
Company, **CENTRAL TOBACCO. CO, LLC,**
A Florida Limited Liability Company
**JAMES BATALINI, individually,**
**WALTHER VAN DER SYPT, individually,**
**SUTHERLAND GLOBAL SERVICES, INC.,**
**d/b/a Kiki Imports**, A New York Corporation,
**MICHAEL BARTUSEK, individually**

       Defendants.

_____/

## COMPLAINT

SMK Associates, LLC (SMK) hereby files its Complaint against LORALI, Inc. (Lorali), V & B TRADING, LLC (V & B), CENTRAL TOBACCO CO., LLC (CT), JAMES BATALINI (BATALINI), individually, WALTHER VAN DER SYPT (VAN DER SYPT), individually, SUTHERLAND GLOBAL SERVICES, INC. (SUTHERLAND) d/b/a Kiki Imports, and MICHAEL BARTUSEK (BARTUSEK), individually, as follows:

## PARTIES

1. Plaintiff, SMK is an Illinois limited liability company. Martin Borg is the managing member of SMK.

2. Defendant, Lorali is a Florida Corporation with its principal place of business in Miami-Dade County, Florida. Paul Mendoza (Mendoza) is the President and owner of Lorali. Lorali is in the business of selling cigarettes.

3. Defendant, V & B is a Florida Limited Liability Corporation with its principal

1

place of business in Palm Beach County, Florida.  V & B is in the business of selling cigarettes.

4.    Defendant, CT is a Florida Limited Liability Corporation with its principal place of business in Palm Beach County, Florida.  CT is in the business of selling cigarettes.

5.    Defendant, James Batalini is an individual residing in Ft. Pierce, Florida.  Batalini is a managing member of V & B and owner of the Universal Warehouse (Universal).  Universal e is no longer an active Florida corporation.

6.    Defendant, Walther Van Der Sypt is an individual residing in Miami, Florida.  Van Der Sypt is the owner of CT and managing member of V & B.

7.    Defendant, Sutherland, is a New York Corporation, who conducted business in the State of Florida.  Sutherland stored cigarettes at Universal in Broward County, Florida.

8.    Defendant, Michael Bartusek, is the Chief Financial Officer of Sutherland.  Bartusek is an individual residing in the State of New York.

## JURISDICTION AND VENUE

9.    Subject matter jurisdiction is invoked pursuant to 28 U.S.C. § 1332, as all the parties are completely diverse in citizenship, and the amount in controversy exceeds $75,000.

10.   Venue is proper in this District by reason of 28 U.S.C. § 1391(b)(2), because all or a substantial part of the events giving rise to SMK's claims occurred in the Southern District of Florida.

## **FACTS**

11.     SMK is a reseller of cigarettes, among other products.  SMK purchases cigarettes and products from suppliers, and immediately resells it to clients.

12.     On or about February 20, 2012, Lorali contacted SMK to place an order for cigarettes.  Lorali submitted purchase order No. 58.  A copy of the purchase order is attached as Exhibit A.  Lorali agreed to purchase Marlboro cigarettes from SMK.  These cigarettes were being delivered to Dubai. Lorali also submitted purchase order No. 59 for Newport cigarettes.

13.     The invoice stated, and Borg explained to Mendoza that the procedure for receiving the cigarettes from SMK worked as follows: (a) A purchase order is submitted; (b) SMK issues an invoice; (c) the invoice is paid within the requested time frame; (d) the buyer can inspect the goods upon request before taking possession of the goods.

14.     On or about February 24, 2012, Lorali paid a deposit for the cigarettes.

15.     On February 27, 2012, Lorali agreed to a Non-Circumvention Agreement. A copy of the agreement is attached as Exhibit B.

16.     On or about March 19, 2012, Lorali paid SMK an additional deposit of $34,200.

17.     Lorali, however, failed to pay the full invoice(s), as required by the contract.

18.     Lorali further made no effort to attend the scheduled inspection for the cigarettes, or arrange for pick up or delivery of the Marlboro or Newport cigarettes.

19.     Because Lorali failed to pay the invoices, and did not make any effort to arrange for pick-up or delivery, Borg wanted to meet Mendoza in person in an effort to

resolve the outstanding past due balance Lorali owed SMK, and to discuss some issues with the orders Lorali had placed with SMK.

20. On April 9, 2012, Borg traveled to Ft. Lauderdale, Florida to meet with Mendoza to discuss the outstanding issues between SMK and Lorali.

21. Mendoza informed Borg that Lorali wanted to continue to do business with SMK. Mendoza proposed to Borg that the funds already paid on deposit be held by SMK for additional orders, as a condition to conducting future business. This was to demonstrate to SMK that Lorali intended to fulfill and "make good" on all orders it places with SMK. Alternatively, Mendoza proposed that SMK should apply the deposit to the charges for payments not received within 5 days of invoice.

22. Around that same time period, Bartusek informed Borg that Sutherland was storing cigarettes at Universal.

23. On or about April 9 and 10, 2012, Borg informed Mendoza that SMK's supplier, Sutherland, had Marlboro cigarettes available to purchase at Universal in Port Everglades, Florida. Borg agreed to sell Lorali these goods in lieu of purchasing the Marlboro cigarettes that Lorali did not take possession of in Dubai.

24. SMK agreed to purchase said Marlboro cigarettes from Sutherland, doing business as KIKI Imports (KIKI), so that it could sell it immediately to Lorali. Michael Bartusek ("Bartusek") is the Chief Financial Officer of Sutherland, and the person with whom Borg dealt. Bartusek was fully aware SMK intended to sell the cigarettes to one of its clients located in Florida.

25. On April 2, 2102, Sutherland, doing business as KIKI, invoiced SMK for the cigarettes it was purchasing from Sutherland for sale to Lorali.

26.     On April 10, 2012, Borg, Mendoza, and a gentleman by the name of Robert Taylor (Taylor), who was acting on behalf of Lorali, began driving to Universal in Port Everglades to inspect the cigarettes for which Sutherland had invoiced SMK.

27.     Prior to April 10, 2012, Lorali, Mendoza, and Taylor had never met, or conducted business with Universal and/or Batalini.

28.     Before Borg, Mendoza, and Taylor reached Universal on April 10, 2012, Bartusek telephoned Borg to tell him that the inspection had to be cancelled because Bartusek had not made the proper arrangements with Batalini, or his staff.

29.     Shortly after April 10, 2012, unbeknownst to Borg, Taylor traveled to Universal alone, on behalf of Lorali, to meet with Batalini.

30.     Taylor went to Universal to inquire about the Marlboro cigarettes Borg advised Lorali were available to purchase at Universal.

31.     At Universal, Taylor met Batalini and Van Der Sypt, who was also at Universal.

32.     Taylor informed Batalini and Van Der Sypt that Lorali already placed a deposit on Marlboro cigarettes being stored at Universal.

33.     Taylor then contaced Mendoza by telephone while he was at Universal, and put Batalini on the telephone.

34.     Batalini spoke with Mendoza on the telephone about purchasing the cigarettes Sutherland was storing at Universal, and other potential purchases.

35.     Mendoza subsequently gave the telephone to Van Der Sypt, who also spoke with Mendoza about purchasing the cigarettes owned by Sutherland, and additional future business.

36. Approximately two weeks later, on or about April 27, 2012, Batalini, along with Van Der Sypt established a company named V & B Trading, LLC (V & B).

37. V & B was established primarily to sell cigarettes to Lorali.

38. By that time, Batalini and Van Der Sypt agreed to sell, and Lorali agreed to purchase the Marlboro cigarettes Sutherland was warehousing.

39. Batalini and Van Der Sypt convinced Bartusek to sell the goods to them instead of SMK.

40. Batalini and Van Der Sypt sought to purchase the cigarettes from Bartusek and Sutherland so that they could sell the cigarettes to Lorali instead of SMK.

41. In order to make it appear that Bartusek, Sutherland, Batalini, V & B, CT, and/or Van Der Sypt were not interfering with SMK's contract and relationship with Lorali, Bartusek arranged for the inspection of the cigarettes by Borg, Bartusek, and Mendoza at Universal to occur at 1:00 p.m. on May 4, 2012.

42. Stephen Weisenfeld (Weisenfeld), who introduced Borg to Mendoza, and Borg, traveled to Florida on May 4, 2012 to attend the inspection.

43. Weisenfeld and Borg arrived at Universal at the scheduled time. Mendoza and Taylor, however, were not present when Weisenfeld and Borg arrived.

44. Shortly before the inspection was to occur, Bartusek notified Borg that he could not attend the inspection because he missed his flight.

45. Additionally, neither Mendoza nor Taylor arrived at Universal on time.

46. Borg then called Mendoza on the telephone to find out whether he would be attending the inspection.

47. During their conversation, Mendoza explained that he and Taylor were

stuck in traffic and running late.

48. By the time Mendoza and Taylor arrived at Universal at approximately 3:00 p.m. on May 4, 2012, Universal closed. As such, Borg, Weisenfeld, Mendoza, and Taylor were denied access.

49. Lorali subsequently refused to pay SMK for the Marlboro cigarettes it agreed to purchase from SMK.

50. Unbeknownst to Borg, Lorali already purchased the Marlboro cigarettes Borg arranged to sell Mendoza, which were owned by Sutherland Global and stored at Universal. Rather than purchasing the cigarettes from SMK, Lorali purchased the cigarettes directly from V & B, CT, Batalini, and/or Van Der Sypt.

51. Batalini and Van Der Sypt arranged and/or brokered the sale of the Marlboro cigarettes to Lorali. These were the very same cigarettes Borg was going to sell Lorali.

52. Since Lorali became aware of the existence of Batalini and Van Der Sypt, which it discovered through Borg's relationship with Sutherland, Lorali, and/or one of Mendoza's affiliated companies have continuously purchased cigarettes from V & B, CT, Batalini, and/or Van Der Sypt.

**COUNT I – BREACH OF CONTRACT ("NON-CIRCUMVENTION AGREEMENT")**
**SMK v. LORALI**

53. SMK repeats and re-alleges the allegations contained in paragraphs 1 through 52 as if fully set herein.

54. SMK and Lorali entered into a Non-Circumvention Agreement. Exhibit B.

55. Lorali breached the Non-Circumvention Agreement when it purchased and continued to purchase cigarettes directly from Batalini and Van Der Sypt (and/or its companies), and/or from Sutherland or Bartusek, thereby circumventing SMK.

56. In fact, Lorali purchased the very same cigarettes Borg offered Lorali directly from V & B, CT, Batalini, and/or Van Der Sypt, and/or Sutherland or Bartusek.

57. SMK has been damaged as a result of Lorali's breach.

WHEREFORE, **SMK ASSOCIATES, LLC,** prays this Court to enter judgment against **LORALI, INC.** for: (a) actual and compensatory damages; (b) lost profits; (c) costs; (d) pre-judgment and post-judgment interest; and (e) such further relief that this Court deems just and proper.

## COUNT II
## INTENTIONAL INTERFERENCE WITH BUSINESS & CONTRACTUAL RELATIONS
## SMK v. V & B, CENTRAL TOBACCO, VAN DER SYPT, AND BATALINI

58. SMK repeats and re-alleges the allegations contained in paragraphs 1 through 57 as if fully set herein.

59. Lorali entered into an agreement with SMK to purchase Marlboro and Newport cigarettes from SMK.

60. Lorali paid a deposit for the goods.

61. Lorali, however, failed to pay the full balance in accordance with the terms of the parties' agreement.

62. On April 9, 2012, Borg traveled to Florida to meet with Mendoza.

63. Since Lorali failed to pay SMK the invoice, and Lorali failed to make arrangements to pick up the goods, Borg made arrangements for Lorali to inspect

8

Marlboro cigarettes being stored at Universal by Sutherland. SMK intended to sell these Marlboro cigarettes to Lorali.

64. On April 10, 2012, Borg and Mendoza, and a gentleman by the name of Robert Taylor (Taylor), who was acting as an agent of Lorali, started to drive to Universal in Port Everglades, Florida to inspect the products for which Sutherland had invoiced SMK.

65. V & B, CT, Batalini, and Van Der Sypt, were acutely aware of Lorali's relationship with SMK. In fact, soon after Borg, Mendoza, and Taylor were on their way to Universal, Taylor traveled alone to Universal to meet with Batalini. At that time, Taylor met with Batalini. Taylor was also introduced to Van Der Sypt, who was also at Universal when Taylor arrived.

66. During their conversation and meeting, Taylor informed Batalini he went to Universal in order to verify whether Borg had goods available to purchase at Universal. Taylor then placed a telephone call to Mendoza, who spoke with Batalini and Van Der Sypt about purchasing cigarettes from them.

67. V & B, CT, Batalini, and Van Der Sypt, intentionally interfered with SMK's business relationship with Lorali. Indeed, V & B, CT, Batalini, and/or Van Der Sypt sold Lorali the very same cigarettes SMK was going to sell Lorali, and/or or brand of cigarettes.

68. Defendants' interference resulted in damages to SMK.

WHEREFORE, **SMK ASSOCIATES, LLC,** prays this Court to enter judgment against **V & B TRADING, LLC, CENTRAL TOBACCO, LLC, JAMES BATALINI, individually, and WALTHER VAN DER SYPT, individually** for: (a) actual and

compensatory damages; (b) lost profits; (c) costs; (d) pre-judgment and post-judgment interest; and (e) such further relief that this Court deems just and proper.

### COUNT III
### CONSPIRACY TO INTENTIONALLY INTERFERE WITH A BUSINESS AND CONTRACTUAL RELATIONSHIP
### SMK v. V & B, CENTRAL TOBACCO, VAN DER SYPT, BATALINI, SUTHERLAND, AND BARTUSEK

69. SMK repeats and re-alleges the allegations contained in paragraphs 1 through 68 as if fully set herein.

70. V & B, Batalini, Van Der Sypt, CT, Bartusek, and Sutherland d/b/a Kiki Imports, agreed to intentionally interfere with SMK's business and contractual relationship with Lorali.

71. V & B, Batalini, Van Der Sypt, CT, Bartusek, and Sutherland, further agreed to orchestrate a scheme to bypass SMK, and sell the cigarettes Sutherland was storing at Universal directly to Lorali, so that V & B, Batalini, V & B, Van Der Sypt, and CT could profit from the sale of the cigarettes rather than SMK.

72. V & B, Batalini, Van Der Sypt, CT, Bartusek, and Sutherland committed overt acts in pursuance of the conspiracy.

73. Namely, V & B, CT, Van Der Sypt, and Batalini convinced Bartusek and Sutherland to allow them to broker and/or sell the Marlboro cigarettes Sutherland and/or Bartusek was storing at Universal to Lorali instead of SMK, knowing full well SMK's client (Lorali) was going to purchase the cigarettes from SMK.

74. Batalini and Van Der Sypt also formed V & B, a company in the business of selling cigarettes, after Taylor met with them at Universal, and they spoke with Mendoza.

75. Bartusek and Sutherland agreed to sell the cigarettes to Batalini, V & B, Van Der Sypt, and/or CT rather than to SMK.

76. V & B, Batalini, CT, Van Der Sypt, Bartusek and/or Sutherland then sold the Marlboro cigarettes to Lorali, thereby circumventing SMK, and thereby interfering with its contractual and business relationship with Lorali.

77. V & B, Batalini, CT, Van Der Sypt, Bartusek have continued to sell cigarettes to Lorali.

78. SMK was damaged as a result of the acts done in pursuance of the conspiracy.

WHEREFORE, **SMK ASSOCIATES, LLC,** prays this Court to enter judgment against **V & B TRADING, LLC, CENTRAL TOBACCO, LLC, JAMES BATALINI, individually, WALTHER VAN DER SYPT, individually, SUTHERLAND GLOBAL SERVICES, INC. and MICHAEL BARTUSEK, individually,** for: (a) actual and compensatory damages; (b) lost profits; (c) costs; (d) pre-judgment and post-judgment interest; and (e) such further relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all claims.

**Date: June 25, 2014**                                **SOLNICK LAW, P.A.**
                                                                        1815 Griffin Road
                                                                        Suite 207
                                                                        Ft. Lauderdale, FL 33004
                                                                        Phone: 954-321-0176
                                                                        Fax: 954-321-0177

                                                                         /s/ *Peter J. Solnick, Esq.*
                                                                  By: _____
                                                                        Peter J. Solnick, Esq/FBN 670006